IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JASON SAINT JAMES PRICE,

               Plaintiff,

vs.                                              Case No. 13-1052-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

               Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On June 10, 2011, administrative law judge (ALJ) Melvin B. Werner issued his decision (R. at 13-21). Plaintiff alleges that he had been disabled since June 30, 2008 (R. at 13). Plaintiff is insured for disability insurance benefits through

June 30, 2008 (R. at 15). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 15). At step two, the ALJ found that plaintiff has the following medically determinable impairments: intermittent pancreatitis with a history of traumatic pancreatitis and surgery for duodenal hematoma, post-traumatic stress disorder, history of conduct disorder, cognitive disorder, alcohol abuse, borderline personality disorder, and rule out borderline intellectual functioning (R. at 16). However, the ALJ further held at step two that plaintiff's impairments or combination of impairments did not significantly limit the ability to perform basic work activities; therefore, plaintiff did not have a severe impairment or combination of impairments (R. at 16). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 21).

**III. Does substantial evidence support the ALJ's determination at step two that plaintiff does not have a severe impairment or combination of impairments?**

Plaintiff argues that the ALJ erred at step two in finding that plaintiff's impairments were nonsevere. The burden of proof at step two is on the plaintiff. See Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe

5

impairment has been described as "de minimis."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); see <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[2]  <u>Williams</u>, 844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).  A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).

---

[2] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

SSR 85-28 (Medical impairments that are not severe) states the following:

> A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. <u>If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process</u>.
>
> ..........
>
> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 WL 56856 at *3, 4 (emphasis added).[3] The step two requirement is generally considered a de minimis screening device to dispose of groundless claims; thus, reasonable doubts on severity are to be resolved in favor of the claimant. <u>Field v. Astrue</u>, Case No. 06-4126-SAC, 2007 WL 2176031 at *4 (D. Kan. June 19, 2007); <u>Brant v. Barnhart</u>, 506 Fed. Supp.2d 476, 482 (D. Kan. 2007); <u>Samuel v. Barnhart</u>, 295 F. Supp.2d 926, 952 (E.D. Wis. 2003); see <u>Church v. Shalala</u>, 1994 WL 139015 at *2 (10th Cir. April 19, 1994)(citing to SSR 85-28, the court stated that

---

[3] SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).

step two is an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint); Newell v. Commissioner of Social Security, 347 F.3d 541, 547 (3rd Cir. 2003)(reasonable doubts on severity are to be resolved in favor of the claimant).

The record contains two physical examinations of the plaintiff. The first, by Dr. Fevurly on July 10, 2009, is a 9 page evaluation (R. at. 301-309). Dr. Fevurly reviewed the medical records, interviewed the plaintiff, and examined the plaintiff and assessed plaintiff with duodenal hematoma and hematoma/contusion of the head of the pancreas, 9/2/06; and subsequent 2 years and 8 months of chronic abdominal pain (R. at 307). Under current fitness for duty, Dr. Fevurly opined as follows:

> Based on the available information, he is qualified to work full time in a light medium work level with lifting limited to 35 pounds on an occasional basis and 20 pounds on a frequent basis. Bending and stooping should be limited to occasional.

(R. at 308).

The ALJ noted that this evaluation was based on a one time examination of the plaintiff, and the ALJ found that plaintiff's lack of follow up treatment following his injury did not support these limitations. Therefore, the opinion was given little weight (R. at 19).

A second physical examination of the plaintiff was performed by Dr. Parra on August 20, 2009 (R. at 317-324). His 8 page report was based on a review of the medical records, and an interview and examination of the plaintiff. His impression was that plaintiff had a duodenal hematoma, and abdominal pain, which was found to be severe and unrelenting (R. at 322). His opinion regarding plaintiff's ability to work was as follows:

> I do not feel that Mr. Price can in the immediate foreseeable future find gainful employment due to his inability to perform repetitive motion with more than 15 to 20 pounds. I would state that he should not lift greater tha[n] 45 pounds at any point either.
>
> He may be able to find employment in a job that requires sitting for the majority of the day (secretarial type positions) but should take hourly breaks to minimize his pain.

(R. at 323).

The ALJ noted that this evaluation is also based on a one time examination and that the limitations are not supported by the lack of follow up medical treatment; therefore, the ALJ gave little weight to this opinion (R. at 19).

On March 25, 2010, Dr. Williamson, who did not examine the plaintiff, but reviewed the medical records that were then in the file, concluded: "Considering the longitudinal history of these allegations and the fact the claimant has not sought medical attention his MDI of S/P duodenal hematoma is non-

9

severe" (R. at 299). The ALJ found that this opinion was well-supported and was given substantial weight (R. at 19.

The court finds numerous problems with the ALJ's analysis of the medical opinion evidence regarding whether plaintiff has a severe physical impairment. First, Dr. Williamson never examined the plaintiff. The opinion of an examining medical source is generally entitled to greater weight than the opinion of a non-examining medical source. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

Second, plaintiff points out that Dr. Williamson did not have before him extensive hospital records (R. at 325-962), and that the evaluations from Dr. Fevurly and Dr. Smith were also not in the record when Dr. Williamson reviewed the file. The fact that Dr. Williamson did not have before him the evaluations of Dr. Fevurly and Dr. Parra is not disputed by the defendant. As noted above, the opinions of examining medical sources are generally entitled to greater weight than the opinion of a non-examining medical source. Furthermore, an ALJ must not consider the opinions of one medical source in isolation, but each medical source opinion must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating or examining sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the

evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration. See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005). Both Dr. Fevurly and Dr. Parra, who, unlike Dr. Williamson, examined the plaintiff, opined that plaintiff had various severe limitations. The court is concerned with the reliance on a stale opinion from a non-examining physician who did not have before him extensive medical records and two opinions from physicians who actually examined the plaintiff. See Chapo v. Astrue, 682 F.3d 1285, 1292-1293 (10th Cir. 2012)(the ALJ's reliance on a patently stale opinion was found to be "troubling" in light of the material changes in the medical record since the report relied on by the ALJ).

Third, the ALJ gave little weight to the opinions of Dr. Fevurly and Dr. Parra because the ALJ found that their opinions were not supported by plaintiff's lack of follow up medical treatment. However, in the case of Grotendorst v. Astrue, 370 Fed. Appx. 879, 882-883 (10th Cir. March 22, 2010), the ALJ found that claimant's anxiety and depression were not severe because there was no objective medical evidence that she had been treated for anxiety or depression. The court held as follows regarding a step two evaluation:

> the regulations set out exactly how an ALJ
> is to determine severity, and consideration
> of the amount of *treatment* received by a
> claimant does not play a role in that
> determination. This is because the lack of
> treatment for an impairment does not
> necessarily mean that the impairment does
> not exist or impose functional limitations.
> Further, attempting to require treatment as
> a precondition for disability would clearly
> undermine the use of consultative
> examinations. Thus, the ALJ failed to follow
> the regulations in reaching her
> determination that Ms. Grotendorst's mental
> limitations were not severe at step two of
> the sequential evaluation.

370 Fed. Appx. at 883. Thus, the ALJ erred at step two by relying on a lack of follow up treatment to discount the opinions of Dr. Fevurly and Dr. Parra that plaintiff did not have a severe impairment(s).

The court will next review the medical opinions regarding plaintiff's mental impairments. On December 18, 2009, Dr. Smith, a licensed psychologist, performed a mental status examination on the plaintiff (R. at 276-279). His conclusions were as follows:

> Because of his low intellectual functioning,
> Mr. Price may have problems understanding
> and following simple instructions,
> particularly in novel or complex situations.
> Because of his low motivation and problems
> with attention and memory, he may have
> difficulty working persistently at tasks.
> Because of his history of problems with
> temper, post traumatic stress and borderline
> traits, he may have difficulty sustaining
> appropriate relations with others. Because
> of his low intellectual functioning, poor

>     arithmetic skills, and difficulty with
>     concentration and memory, he may need help
>     managing benefits.

(R. at 278-279). The ALJ noted that the opinion of Dr. Smith was based on a single evaluation, and there is no evidence of treatment for mental impairments to support the findings of Dr. Smith. The ALJ states that much of the report of Dr. Smith focuses on the subjective complaints of the plaintiff and plaintiff's credibility is limited. Thus, the opinions of Dr. Smith are given little weight (R. at 19).

Dr. Martin conducted a state agency mental assessment of the plaintiff on February 15, 2010 (R. at 282-296), and found that plaintiff had moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace (R. at 290). Dr. Martin found that plaintiff was moderately limited in 7 of 20 categories, and markedly limited in his ability to carry out detailed instructions (R. at 294-295). Dr. Martin opined that plaintiff was capable of maintaining attention for two hour increments without extra supervision, and would do best in an environment where there was minimal interaction with others and no public contact (R. at 296). Dr. Schulman reviewed this assessment on March 25, 2010, and affirmed it as written (R. at 297). The ALJ gave little weight to the opinions of Dr. Martin for the same reason he gave little weight to the opinions of Dr. Smith (R. at 20).

13

The ALJ rejected the opinions of Dr. Smith, Dr. Martin and Dr. Schulman because of his assertion that Dr. Smith focused on plaintiff's subjective complaints. In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

As Langley makes clear, the ALJ must have either a legal or evidentiary basis for asserting that a medical source report was based only or primarily on plaintiff's subjective complaints. However, the ALJ did not have either a legal or evidentiary basis for this assertion. In fact, the report of Dr. Smith indicates that his sources of information were a mental status

14

exam, and a review of records provided by Disability Determination Services (R. at 276).

Furthermore, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx. 638, 641 (10th Cir. Aug. 11, 2005). A psychological opinion may rest either on observed signs and symptoms or on psychological tests. Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). The ALJ cannot reject a psychologist's opinion solely for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's judgment for that of the psychologist. Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641. Given the fact that a psychological report is dependent, at least in part, on a patient's subjective statements, and the fact that Dr. Smith did not just rely on plaintiff's self-reporting, but also on Dr. Smith's own observations, a review of medical records, and a mental status examination, the court finds that the ALJ erred by discounting the opinion of Dr. Smith because of the ALJ's assertion that Dr. Smith's report focused on plaintiff's subjective complaints.

The ALJ also relied on the lack of treatment for any mental impairments in support of giving little weight to the reports of Dr. Smith, Dr. Martin and Dr. Schulman. However, Grotendorst, cited above, clearly held that the lack of treatment for an impairment does not necessarily mean the impairment does not exist, or does not impose functional limitations. Consideration of the amount of treatment received by a claimant does not play a role in the determination of severity at step two. Thus, the court finds that the ALJ gave invalid reasons for discounting the opinions of Dr. Smith, Dr. Martin and Dr. Schulman regarding the issue of whether plaintiff had a severe mental impairment.

SSR 85-28 states that if a finding that a plaintiff's impairments, when considered in combination, are not severe is not clearly established by medical evidence, adjudication must continue through the sequential evaluation process. Reasonable doubts on severity are to be resolved in favor of the claimant. In fact, the medical evidence in the case before the court provides strong support for a finding that plaintiff has a severe impairment or combination of physical and/or mental impairments at step two.

Both Dr. Fevurly and Dr. Parra opined after a consultative examination that plaintiff had various physical limitations in his ability to work. The ALJ relied on Dr. Williamson, who never examined the plaintiff, and did not have before him the

examinations by Dr. Fevurly and Dr. Parra and hundreds of pages of hospital records.  The opinion of Dr. Williamson was clearly stale in light of the medical records added to the case record subsequent to the examination of the record by Dr. Williamson.  Finally, for the reasons set forth above, the ALJ erred by relying on the lack of follow up treatment by the plaintiff.

Dr. Smith performed a mental consultative examination of the plaintiff, and found that plaintiff had a number of mental limitations in his ability to work.  Dr. Martin and Dr. Schulman, after reviewing Dr. Smith's report, found that plaintiff had a number of mental limitations in plaintiff's ability to work.  There is no medical opinion evidence stating that plaintiff had no severe mental impairments, and the ALJ, as set forth above, provided invalid reasons for giving little weight to the opinions of Dr. Smith, Dr. Martin, and Dr. Schulman.

Substantial evidence does not support the finding of the ALJ that plaintiff does not have a severe impairment or combination of impairments.  Plaintiff has provided substantial medical opinion evidence that his physical and mental impairments would have more than a minimal effect on his ability to do basic work activities.  On remand, the ALJ is reminded that a claim may be denied at step two only if the medical evidence clearly establishes that the individual's impairments,

in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability to perform basic work activities.  Otherwise, the adjudication must continue through the sequential evaluation process.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 11th day of March 2014, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge